**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

ERWIN GRAMPP, derivatively on behalf of
JBI, INC.,

                Plaintiff,

vs.

JOHN BORDYNUIK and
RONALD C. BALDWIN,

                Defendants,

     and

JBI, INC.,

                Nominal Defendant.

Civil Action No.:  1:13-cv-11906-MLW

**(Leave to file granted on 7/17/14)**

---

<u>**INDIVIDUAL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED SHAREHOLDER DERIVATIVE COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ...................................................................................................1

II.  FACTS .................................................................................................................1

      A.     BASIS OF PLAINTIFF'S CLAIM. ..........................................................1

      B.     PLAINTIFF'S DE MINIMUS SHARE OWNERSHIP AND
              ADVERSITY TO JBI. ..............................................................................6

III. DISCUSSION ......................................................................................................7

      A.     PLAINTIFF'S DEMAND FUTILITY ALLEGATIONS ARE
              INADEQUATE...........................................................................................7

              1.     Legal Standard ............................................................................7

              2.     Plaintiff Fails to Plead Demand Futility as to JBI's Current
                     Board Members.............................................................................9

               3.     Bogolin and Ingham's Insider Status Did Not Impair Their
                     Independence ..............................................................................11

               4.     Bordynuik's Alleged Appointment of Bogolin and Ingham
                     Did Not Undermine Their Independence......................................12

               5.     Bordynuik's Actions Regarding Bogolin and Ingham Were
                     Governed by the Letter Agreement................................................13

               6.     Bogolin and Ingham's Receipt of Compensation is
                     Insufficient to Undermine their Disinterestedness or
                     Independence ..............................................................................13

               7.     Ingham's Receipt of Compensatory Shares Did Not
                     Undermine his Independence........................................................15

               8.     Plaintiff Shows No "Substantial Likelihood of Director
                     Liability" Regarding Bogolin or Ingham ......................................16

      B.     PLAINTIFF IS AN INADEQUATE SHAREHOLDER
              REPRESENTATIVE ...............................................................................18

      C.     PLAINTIFF LACKS STANDING DUE TO HIS BELATED
              SHARE OWNERSHIP ...........................................................................21

D.      PLAINTIFF'S CLAIMS ARE EITHER TIME-BARRED OR
UNACCOMPANIED BY DAMAGES .....................................................23

      1.    Plaintiff's Media Credits Claim is Time-Barred ...........................23

      2.    Plaintiff Lacks Standing to Assert His "P2O" Claim, Which
is Unaccompanied by Any Damages .............................................27

E.      PLAINTIFF FAILS TO PLEAD INTENTIONAL CONDUCT
AND TO PLEAD FRAUD WITH PARTICULARITY ...........................27

      1.    Plaintiff Failed to Plead That Baldwin Engaged in
Intentional Misconduct ................................................................29

      2.    Plaintiff Failed to Plead Circumstances of the Alleged
Fraud with Particularity ...............................................................31

F.      PERSONAL JURISDICTION OVER BALDWIN IS LACKING ..........33

IV.  CONCLUSION..................................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co*,
   267 F.3d 30 (1st Cir. 2001) ........................................................................................2

*Arazie v. Mullane*,
   2 F.3d 1456 (7th Cir. 1993) ......................................................................................33

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................16

*Blasband v. Rales*,
   971 F.2d 1034 (3d Cir. 1992) ...................................................................................22

*Blum v. Morgan Guaranty Trust Co. of New York*,
   539 F.2d 1388 (5th Cir. 1976) ..................................................................................19

*Brigand v. Van Wagoner Funds, Inc.*,
   2009 WL 2175623 (D. Nev. Jul. 16, 2009)..............................................................25

*Brody v. Chemical Bank*,
   517 F.2d 932 (2d Cir. 1975) .....................................................................................10

*Cadle v. Hicks*,
   272 Fed. Appx. 676 (10th Cir. 2008) .......................................................................21

*Caviness v. Evans*,
   229 F.R.D. 354 (D. Mass 2005) ......................................................................2, 12, 13

*Chesterton v. Chesterton*,
   1990 WL 150066 (D. Mass. Oct. 2, 1990)................................................................20

*Cohen v. Bloch*,
   507 F. Supp. 321 (S.D.N.Y. 1980) .......................................................................6, 20

*Curtis v. Brown*,
   2007 WL 2590452 (D. Colo. Sept. 4, 2007) ............................................................22

*Davis v. Comed*,
   619 F.2d 588 (6th Cir. 1980) ....................................................................................19

*Dodds v. Cigna Sec., Inc.*,
   12 F.3d 346 (2nd Cir. 1993) ...................................................................26

*Fagin v. Gilmartin*,
   432 F.3d 276 (3d Cir. 2005) ...................................................................11

*Fink v. Komansky*,
   2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) ...........................................15

*Fitzer v. Security Dynamics Techs.*,
   119 F. Supp. 2d 12 (D. Mass. 2000)...................................................29, 32

*Fosbre v. Matthews*,
   2010 WL 2696615 (D. Nev. Jul. 2, 2010)..............................14, 15, 17, 28

*G.A. Enters., Inc. v. Leisure Living Communities, Inc.*,
   517 F.2d 24 (1st Cir. 1975) ....................................................................18

*Gelfer v. Pegasystems, Inc.*,
   96 F. Supp. 2d 10 (D. Mass. 2000) .........................................................29

*Gerber v. Bowditch*,
   2006 WL 1284232 (D. Mass. May 8, 2006) ............................................28

*Gonzalez Turul v. Rogatol Distrib., Inc.*,
   951 F.2d 1 (1st Cir. 1991) ...................................................................7, 10

*Greebel v. FTP Software, Inc.*,
   194 F.3d 185 (1st Cir. 1999) ..................................................................28

*Grossman v. Johnson*,
   674 F.2d 115 (1st Cir. 1982).................................................................10

*Guenther v. Pacific Telecomm., Inc.*,
   123 F.R.D. 341 (D. Or. 1988)..................................................................19

*Heit v. Baird*,
   567 F.2d 1157 (1st Cir. 1977)...................................................................8

*In re American Int'l Group, Inc. Derivative Litig.*,
   700 F. Supp. 2d 419 (S.D.N.Y. 2010) .....................................................15

*In re Bank of N.Y. Derivative Litig.*,
   320 F.3d 291 (2d Cir. 2003) ..............................................................21, 22

*In re Coca-Cola Enters., Inc. Derivative Litig.*,
   478 F. Supp. 2d 1369 (N.D. Ga. 2007) ...................................................14

*In re E.F. Hutton Banking Practices Litig.*,
    634 F. Supp. 265 (S.D.N.Y. 1986) ........................................................................14

*In re Google, Inc. Shareholder Derivative Litig.*,
    2013 WL 5402220 (N.D. Cal. Sept. 26, 2013) ......................................................12

*In re IAC/Interactive Corp. Sec. Litig.*,
    478 F. Supp. 2d 574 (S.D.N.Y. 2007) ..................................................................12

*In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*,
    850 F. Supp. 1105 (S.D.N.Y. 1993) ....................................................................26

*In re Kauffman Mut. Fund Actions*,
    479 F.2d 257 (1st Cir. 1973) ..................................................................................7

*In re Maxim Integrated Products, Inc., Derivative Litig.*,
    574 F. Supp. 2d 1046 (N.D. Cal. 2008) ..............................................................25

*In re Nyfix, Inc. Derivative Litigation*,
    567 F. Supp. 2d 306 (D. Conn. 2008) ....................................................................9

*In re Sagent Tech., Inc., Derivative Litig.*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ..............................................................12

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001) ..................................................................................29

*In re Sierra Wireless, Inc. Sec. Litig.*,
    482 F. Supp. 2d 365 (S.D.N.Y. 2007) ................................................................29

*In re Stratus Computer, Inc. Sec. Litig.*,
    1992 WL 73555 (D. Mass. Mar. 27, 1992) ..........................................................28

*In re Verisign, Inc., Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007)........................................................21, 23

*Israni v. Bittman*,
    473 Fed. Appx. 548 (9th Cir. 2012) ................................................11, 13, 15, 29

*Jones v. Jenkins*,
    503 F. Supp. 2d 1325 (D. Ariz. 2007) ................................................................11

*Kaster v. Modification Sys. Inc.*,
    731 F.2d 1014 (2d Cir. 1984) ..............................................................................12

*Kolancian v. Snowden*,
    532 F. Supp. 2d 260 (D. Mass. 2008) ..................................................................6

*Kravetz v. U.S. Trust Co.*,
  941 F. Supp. 1295 (D. Mass. 1996) ...............................................................25, 26

*Larson v. Dumke*,
  900 F.2d 1363 (9th Cir. 1990) .................................................................................18

*Lenz v. Associated Inns and Rests. Co. of Am.*,
  833 F. Supp. 362 (S.D.N.Y. 1993) ..........................................................................26

*Louisiana Mun. Police Employees Ret. Sys. v. Wynn*,
  2014 WL 994616 (D. Nev. Mar. 13, 2014) ...............................................................10

*Maggio v. Gerard Freezer & Ice Co.*,
  824 F.2d 123 (1st Cir. 1987) ...................................................................................24

*McGinty v. Beranger Volkswagen, Inc.*,
  633 F.2d 226 (1st Cir. 1980) ...................................................................................29

*Menowitz v. Brown*,
  991 F.2d 36 (2d Cir. 1993) ......................................................................................24

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*,
  567 F.3d 8 (1st Cir. 2009) .......................................................................................30

*Owen v. Modern Diversified Industries, Inc.*,
  643 F.2d 441 (6th Cir. 1981) ...................................................................................20

*Papasan v. Allain*,
  478 U.S. 265 (1986).................................................................................................16

*Peterson v. Regina*,
  935 F. Supp. 2d 628 (S.D.N.Y. 2013) .....................................................................23

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Lundgren*,
  579 F. Supp. 2d 520 (S.D.N.Y. 2008) .....................................................................11

*Quantum Tech. Partners II, L.P. v. Altman Browning and Co.*,
  2008 WL 4525769 (D. Or. Oct. 2, 2008), *aff'd*, 436 Fed. Appx. 792 (9th Cir. 2011) .......18, 19

*Quinn v. Elliott*,
  1996 WL 233144 (9th Cir. May 7, 1996)..................................................................26

*Quirke v. St. Louis-San Francisco Ry. Co.*,
  277 F.2d 705 (8th Cir. 1960)....................................................................................19

*Rapaport v. Soffer*,
  2012 WL 2522069 (D. Nev. Jun. 29, 2012)..............................................................28

*Recchion ex rel. Westinghouse Elec. Corp. v. Kirby*,
    637 F. Supp. 1309 (W.D. Pa. 1986) ....................................................20

*Reisman v. KPMG Peat Marwick LLP*,
    965 F. Supp. 165 (D. Mass. 1997) .....................................................27

*Robinson v. Computer Servicenters, Inc.*,
    75 F.R.D. 637 (N.D. Ala. 1976) ........................................................20

*RTR Technologies, Inc. v. Helming*,
    707 F.3d 84 (1st Cir. 2013) ...............................................................24

*Sachs v. Sprague*,
    401 F. Supp. 2d 159 (D. Mass. 2005) ...............................................28

*Schmidt v. Skolas*,
    2013 WL 4051205 (E.D. Pa. Aug. 12, 2013)....................................26

*Selbst v. McDonald's Corp.*,
    2005 WL 2319936 (N.D. Ill. Sep. 21, 2005)....................................33

*Semerenko v. Cendant Corp.*,
    223 F.3d 165 (3d Cir. 2000) ..............................................................25

*Shaw v. Digital Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996)..............................................................33

*Smith v. Ayres*,
    977 F.2d 946 (5th Cir. 1992) .............................................................20

*Sprando ex rel. Int'l Game Tech. v. Hart*,
    2011 WL 3055242 (D. Nev. Jul. 22, 2011) ......................................22

*Stiegele ex rel Viisage Tech., Inc. v. Bailey*,
    2007 WL 4197496 (D. Mass. Aug. 23, 2007)...............................8, 12

*Strickland v. Hongjun*,
    2011 WL 2671895 (S.D.N.Y. Jul. 8, 2011) ......................................28

*Suna v. Bailey Corp.*,
    107 F.3d 64 (1st Cir. 1997) ...............................................................29

*Sutton v. Culver*,
    204 F. Supp. 2d 20 (D. Maine 2002)................................................29

*Tobias v. First City Nat. Bank & Trust Co.*,
    709 F. Supp. 1266 (S.D.N.Y. 1989) ................................................29

*Weinhaus v. Gale*,
  237 F.2d 197 (7th Cir. 1956) ..................................................................................22

**STATE CASES**

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ...........................................................................8, 12, 14

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
  845 A.2d 1040 (Del. 2004) .......................................................................8, 10, 12

*Braddock v. Zimmerman*,
  906 A.2d 776 (Del. 2006) .............................................................................................9

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) ...........................................................................................14

*Golden Nugget, Inc. v. Ham*,
  646 P.2d 1221 (Nev. 1982)........................................................................................24

*Grobow v. Perot*,
  539 A.2d 180 (Del. 1988) ...........................................................................................13

*Harrison v. NetCentric Corp.*,
  744 N.E.2d 622 (Mass. 2001) ....................................................................................23

*Hayat v. Al-Mazeedi*,
  2011 WL 1532109 (Mass. Super., Jan. 10, 2011) ....................................................23

*In re Amerco Derivative Litig.*,
  252 P.3d 681 (Nev. 2011)....................................................................................24, 28

*In re Dow Chemical Co. Derivative Litig.*,
  2010 WL 66769 (Del. Ch. Jan. 11, 2010) ................................................................14

*Johnston v. Box*,
  903 N.E.2d 1115 (Mass. 2009) ....................................................................................8

*Keever v. Jewelry Mountain Mines, Inc.*,
  688 P.2d 317 (Nev. 1984)....................................................................................21, 22

*Kirley v. Kirley*,
  521 N.E.2d 1041 (Mass. App. Ct. 1988)..................................................................25

*Nev. State Bank v. Jamison Family P'ship*,
  801 P.2d 1377 (Nev. 1990)........................................................................................24

*Rales v. Blasband*,
  634 A.2d 927 (Del. 1993) .............................................................................................9

*Seminaris v. Landa*,
   662 A.2d 1350 (Del. Ch. 1995) ....................................................................................9

*Shoen v. SAC Holding Corp.*,
   137 P.3d 1171 (Nev. 2006) ...................................................................8, 9, 10, 16

*Siragusa v. Brown*,
   971 P.2d 801 (Nev. 1998) ..........................................................................................24

*Williams v. Ely,*
   668 N.E.2d 799 (Mass. 1996) ...................................................................................24

**STATE STATUTES**

Nev. Rev. Stat. § 11.190(3)(d) ............................................................................................24

Nev. Rev. Stat. § 78.138(7) .........................................................................16, 27, 28, 30

**RULES**

Fed. R. Civ. P. 23.1 .................................................................................................... passim

Fed. R. Civ. P. 9(b) ...............................................................................................28, 29, 33

Fed. R. Civ. P. 12(b)(6) ......................................................................................16, 27, 29

Fed. R. Civ. P. 12(b)(1) ...........................................................................................................27

**OTHER AUTHORITIES**

7C Charles Alan Wright, et al., *Federal Practice and Procedure* § 1828 ....................................22

# I.   INTRODUCTION

Individual Defendants John Bordynuik and Ronald Baldwin move this Court to dismiss Plaintiff's amended complaint.[1]  This is Plaintiff's third attempt to impose liability on JBI's former officers and directors in connection with the improper accounting for a corporate asset in 2009.  Plaintiff's third attempt, however, is not a charm: Plaintiff – who owns about ten-dollars' worth of JBI shares – fails to adequately plead demand futility, is not a fair and adequate shareholder representative, did not own stock at the time of the challenged transaction, has raised time-barred claims, and fails to adequately plead the single breach-of-fiduciary claim by failing to set forth particularized facts that demonstrate Individual Defendants' culpability.  Given these fatal deficiencies, Plaintiff's amended complaint must be dismissed.

# II.   FACTS

## A.  BASIS OF PLAINTIFF'S CLAIM.

Plaintiff's amended complaint once again seeks to impose liability on JBI's former CEO and CFO in connection with JBI's restatement of its 2009 financial statements, which included an erroneous valuation of a corporate asset referred to in this litigation as the "Media Credits." *See Grampp I* Complaint; *Grampp II* original complaint; Am. Cmplt. ¶1-6.  On August 24, 2009, JBI entered into a transaction in which it acquired the Media Credits.  Am. Cmplt. ¶34.  Plaintiff alleges that JBI valued the Media Credits in its financial statements at their face value (*i.e.*, $9,997,134) in its quarterly report on Form 10-Q for the third quarter ended September 30, 2009 (which was filed with the SEC on November 16, 2009) and in its annual report on Form 10-K for

---

[1] On July 17, 2014, this Court granted Individual Defendants' request to file a 40-page brief. Doc. #52.

the fiscal year ended December 31, 2009 (which was filed on March 31, 2010).  Am. Cmplt. ¶¶37-38.

On May 21, 2010, JBI disclosed that its financial statements should not be relied upon due to questions concerning the accounting treatment of corporate acquisitions in 2009 and the valuation of the Media Credits.  *See* Am. Cmplt. ¶67, referencing JBI Form 8-K filed May 21, 2010.[2]  ***Exh. 1*** (Form 8-K filed 5/21/10).[3]  JBI no longer raised capital following this disclosure.  *See* Am Cmplt. ¶64 ("[b]eginning in the fall of 2009 through May 2010, JBI raised approximately $8.4 million in capital from private equity investment").  On July 9, 2010, JBI filed restated financial statements with the SEC that corrected the valuation of the Media Credits, thereby reporting a decrease in total assets and equity, and an increased net loss.  Am. Cmplt. ¶67, referencing JBI Form 10-K/A filed July 9, 2010.  ***Exh. 2*** (Form 10-K/A, filed 7/9/10) Part I, and n.2 on p. 29.

At the time of the May 21 and July 9, 2010 SEC filings, Bordynuik was JBI's chief executive officer ("CEO") and a member of its board of directors, and Baldwin was the Company's chief financial officer ("CFO").  ***Exh. 1***; ***Exh. 2*** (Part III, Item 10).  On November 17, 2010, JBI filed an amended Form 10-Q including restated financial statements for the third quarter of 2009.  Am. Cmplt. ¶67; ***Exh. 3*** (Form 10-Q/A filed 11/17/10).  This filing provided no new information and repeated that the restatement was due to, among other things, "the valuation and subsequent impairment of media credits."  *Id.*, Part 1, Note 3 to Financial Statements at p.9.

---

[2] In ruling on a motion to dismiss, this Court may consider public filings with the SEC.  *Caviness v. Evans*, 229 F.R.D. 354, 359 n. 45 (D. Mass. 2005) ("This court may consider public filings with the SEC when deciding a motion to dismiss.") (citing *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co*, 267 F.3d 30, 33 (1st Cir. 2001)).

[3] The exhibits are attached to a separately filed Request for Judicial Notice.

On December 19, 2011, Bordynuik resigned as CFO and JBI's Board replaced him with Matthew Ingham as CFO.  ***Exh.4*** (Form 8-K filed 12/21/11) at Item 5.02.

On April 6, 2011, Baldwin resigned from his CFO position.  Am. Cmplt. ¶16.

On January 4, 2012, the SEC filed a civil lawsuit against the Company, Bordynuik and Baldwin, alleging that they violated various provisions of the federal securities laws in connection with JBI's valuation of the Media Credits in its third-quarter and year-end 2009 financial statements.   Am. Cmplt. ¶79, referencing SEC Action; *see **Exh. 5*** (Complaint filed in *SEC v. JBI, Inc. et al.*, No. 1:12-cv-10012-MLW (D. Mass.) ["SEC Action"].)  This was the only factual basis for the SEC's lawsuit.  On January 23, 2013, a final judgment was entered in the SEC Action, which resulted in JBI paying a civil penalty of $150,000 in settlement.  Am. Cmplt. ¶80.

On March 16, 2012, Plaintiff filed his first complaint against Bordynuik and Baldwin, among others.  *See Grampp v. Bordynuik, et al.*, No. 1:12-cv-10495-MLW (D. Mass.) ("*Grampp I*"), Complaint, Dkt. #1.  The *Grampp I* complaint repeated the SEC's allegations regarding the Media Credits and also alleged vaguely that Bordynuik made misrepresentations about the Company's commercial fuel processing operations, known as Plastic2Oil or P2O.  *See Grampp I,* Dkt. #1 ¶¶71-78.  Plaintiff did not make a Rule 23.1(b)(3) pre-suit demand before filing the *Grampp I* complaint.  *Grampp I* Cmplt. at ¶85.

On May 15, 2012, certain individuals agreed to invest $10 million in JBI and, in connection with that investment, required that the Company "make certain changes to its management."  ***Exh. 6*** (Form 8-K filed 5/17/12) at Item 1.01.  The conditions of their investment are evidenced by a May 15, 2012 Letter Agreement.  ***Exh. 7*** (JBI Form SC 13D/A, filed 5/24/12, attaching as Exhibit 1 thereto the May 15, 2012 Letter Agreement).  The investors: (a) required

Bordynuik to resign from his positions as CEO and president; (b) prohibited Bordynuik from voting his shares "to appoint [himself] or any other individual who is not the President or Treasurer of the Company or a Qualified Independent Director . . . as a member of the Board"; and (c) compelled Bordynuik to vote his shares "in favor of" any qualified independent directors nominated by the JBI Board.  *Id*. at Item 6 & Letter Agreement ¶¶ 3, 4.  Pursuant to the May 12 Letter Agreement, effective May 15, 2012, Bordynuik resigned from his positions as CEO, president, and director, and he was given a "non-executive position" with JBI.  ***Exh. 6*** at Item 5.02.  Also on May 15, 2012, Ingham was appointed as an additional director, and other individuals were added and removed from the Board.  *Id.*  On May 2, 2013 Tony Bogolin was appointed as president, chief executive officer, and director.  ***Exh. 8*** (Form 8-K filed 5/3/2013), Item 5.02.

A further condition imposed by the investors was Bordynuik's decrease in share holdings and voting rights.  To that end, Bordynuik began implementing a process to retire a certain number of his shares of preferred stock, and he transferred 400,000 shares of common stock to Ingham on April 12, 2012, which Bordynuik disclosed in the May 24, 2012 SEC filing that accompanied the Letter Agreement.  ***Exh. 7*** at Items 5 & 6.

In July 2012, in the *Grampp I* case, the individual defendants filed a motion to dismiss, arguing that Plaintiff failed to adequately allege demand futility, culpable conduct, and cognizable damages.  *Grampp I* Individual Defendants' Motion to Dismiss Plaintiff's Verified Shareholder Derivative Complaint, Doc. #22 in Case No. 1:12-cv-10495-MLW.  On June 26, 2013, this Court dismissed *Grampp I*, without prejudice, but advised that "the failure to make a demand also appears meritorious and [Plaintiff] ha[s]n't adequately alleged culpable conduct" and "encourage[d] plaintiff's counsel, before they file another case . . . to really look hard at the

futility issue."  Order, Doc. #42 in Case No. 1:12-cv-10495-MLW and related 6/26/13 hearing transcript, *Exh. 9*, at 7, 9.

On August 9, 2013, Plaintiff filed the original *Grampp II* complaint.  The original *Grampp II* complaint is virtually identical to the *Grampp I* complaint, alleging once again that the Individual Defendants (limited to Baldwin and Bordynuik) breached their fiduciary duties by "improper[ly] accounting" for the Media Credits in 2009 and making largely unidentified "falsehoods" about the P2O process.  *Grampp I* Cmplt. at Count I; *cf. Grampp II* Cmplt. at Count I, and ¶98.  Again, Plaintiff did not make a Rule 23.1(b)(3) pre-suit demand before filing his original *Grampp II* complaint.  Cmplt. ¶87.

As of August 9, 2013, Ingham and Bogolin were the only JBI board members.  *See* Exhs. 6 and 8.  However, on August 14, 2013, about a week after Plaintiff filed his original *Grampp II* complaint, Bogolin and Ingham resigned all of their officer and director positions.  *Exh. 10* (Form 8-K filed 8/15/2013), Item 5.02.  At that time, the Company appointed Richard Heddle as JBI's new President, CEO and a member of the Board; Nicholas J. Terranova as its new CFO;[4] and Philip Bradley as a member of the Board.  *Id.*

In October 2013, the Individual Defendants moved to dismiss the original *Grampp II* complaint on the grounds that Plaintiff failed to adequately plead demand futility, could not fairly and adequately represent shareholders, pleaded claims that were time-barred; lacked standing regarding alleged misstatements about the P2O process, and failed to plead personal jurisdiction over Baldwin.  Doc. #15.  After the parties briefed the motion and days before a scheduled hearing, Plaintiff sought leave to amend his original complaint.  Doc. #32.  Individual

---

[4]Mr. Terranova resigned on February 18, and Rahoul S. Banerjea was appointed as JBI's new CFO on March 17, 2014.

Defendants opposed the request, in part on the grounds that the amendment would be futile because the board composition had changed since the original complaint was filed, and the proposed amended complaint failed to allege that pre-suit demand had been made on the new board. Doc. #41 (attaching 8/15/13 Form 8-K). This Court granted leave and Plaintiff filed an amended complaint on June 24, 2014. Doc. #49. Again, Plaintiff did not make a Rule 23.1(b)(3) pre-suit demand before filing his amended *Grampp II* complaint. Am. Cmplt. ¶87.

## B. PLAINTIFF'S DE MINIMUS SHARE OWNERSHIP AND ADVERSITY TO JBI.

At the time Plaintiff filed his original *Grampp II* complaint in August 2013, he owned 100 shares of restricted common stock (out of 89,941,231 shares outstanding) that he acquired on January 7, 2010. Nicholas Terranova Declaration at ¶ 4. Plaintiff received these shares at no cost while he was employed by Pak-It, LLC ("Pak-It"), which was then a JBI subsidiary. Bordynuik Declaration, ¶¶ 3-4.[5] In September 2013 (immediately before Plaintiff filed the original complaint), JBI's stock was trading at around 38 cents per share, making the value of Plaintiff's shares approximately $38.00. Terranova Decl. at ¶ 4. At the current price, Plaintiff's shares are worth about $10.00.

Plaintiff left Pak-It in June 2011 to work for Aquachempacs, LLC, which was a direct competitor of Pak-It in the same geographic market. Kenneth Hammel Declaration, ¶ 4. Stephen Seneca, the general partner of Plaintiff's employer, ***see Exh. 11*** (Aquachempacs corporate records identifying Seneca as the general partner of Aquachempacs) is involved in at

---

[5] Courts may consider "material in addition to the pleadings" in deciding a motion to dismiss for failure to comply with Rule 23.1. *See, e.g., Cohen v. Bloch*, 507 F. Supp. 321, 321–22, 324, 327 (S.D.N.Y. 1980) (dismissing claims for failure to comply with Rule 23.1's "fair and adequate representation" requirement); *Kolancian v. Snowden*, 532 F. Supp. 2d 260, 261-262 (D. Mass. 2008) (noting that "the court is permitted to look beyond the pleadings" in deciding a motion to dismiss that challenges a plaintiff's standing under Rule 23.1).

least two other civil actions adverse to JBI and Pak-It.  In one action, Pak-It's successor-in-interest (Big 3 Packaging, LLC) brought a patent and trademark infringement action against Seneca, Aquachempacs and others relating to the use of Pak-It's intellectual property, see *Exh. 12* (Big 3 Packaging, LLC's Complaint for Patent and Trademark Infringement) and in the second action, Seneca filed suit against JBI and Bordynuik based on an alleged delay in the removal of a restrictive legend on Seneca's JBI stock certificate so that he could sell his shares. *Exh. 13* (Seneca Complaint).

### III.   DISCUSSION

### A.  PLAINTIFF'S DEMAND FUTILITY ALLEGATIONS ARE INADEQUATE.

#### 1.  Legal Standards

As a shareholder, Plaintiff is required, before filing suit, to make a demand on the Company's board to obtain the action that the shareholder desires.  Fed. R. Civ. P. 23.1(b)(3). Rule 23.1 is an "exceptional rule of pleading" premised on the ground that normally the directors – not shareholders like Plaintiff – conduct the affairs of the company.  *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 263 (1st Cir. 1973).  Plaintiff did not make a Rule 23.1(b)(3) pre-suit demand before filing the original, or amended, *Grampp II* complaint, just as he failed to do so regarding his *Grampp I* complaint that was dismissed by the Court.

Although a pre-suit demand may be excused, it is Plaintiff's obligation to comply with the stringent requirements imposed by the First Circuit and Nevada law to plead particularized facts which demonstrate demand futility – i.e., that a majority of the board is interested in, or lacks independence as to, the challenged transaction, or that there exists a reasonable doubt that the challenged transaction was a valid exercise of business judgment.  *Gonzalez Turul v. Rogatol Distrib., Inc.*, 951 F.2d 1, 2 (1st Cir. 1991) ("[t]his Circuit vigorously enforces [the demand]

requirement and will dismiss derivative actions when plaintiffs do not comply"); *Heit v. Baird*, 567 F.2d 1157, 1162 n.6 (1st Cir. 1977) (stringent pleading standard furthers the longstanding principle that the board of directors is vested with the authority to manage the corporation's affairs and "permits the company an opportunity to put its own house in order before resort to the courts"). Plaintiff may not rely on "mere conclusions or generalized allegations of control, acquiescence, wrongful participation, or the like" to avoid dismissal. *Stiegele ex rel Viisage Tech., Inc. v. Bailey*, 2007 WL 4197496, at * 5 (D. Mass. Aug. 23, 2007); *accord Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1180 (Nev. 2006).

Because JBI is incorporated in Nevada, the law of that state controls whether a pre-suit demand would have been futile. *Johnston v. Box*, 903 N.E.2d 1115, 1123 (Mass. 2009) (substantive requirements of the demand rule are governed by the law of the state of incorporation). In assessing demand futility, Nevada follows the *Aronson* test under which a court must decide "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984); *Shoen*, *supra*, 137 P.3d at 1184 (Nevada Supreme Court adopted *Aronson* demand-futility test). The demand futility analysis begins with the *presumption* that directors are disinterested, independent, and "faithful to their fiduciary duties." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048-1049 (Del. 2004).

In the context of demand futility, "[i]ndependence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, *supra*, 473 A.2d at 816. To raise a reasonable doubt as to independence, a plaintiff must allege particularized facts "that show that the majority is

'beholden to' directors who would be liable or for other reasons is unable to consider a demand on its merits." *Shoen*, *supra*, 137 P.3d at 1183.

A director may be shown to be interested if he has a personal financial interest in the subject matter of the litigation that is not shared by the corporation or its shareholders. *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993). In order to excuse his failure to make a demand, Plaintiff must raise a reasonable doubt regarding whether a director is disinterested, meaning he "would be 'materially affected, either to [his] benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders.'" *Shoen*, *supra*, 137 P.3d at 1183 (quoting *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995)).

**2.   Plaintiff Fails to Plead Demand Futility as to JBI's Current Board Members.**

Plaintiff alleges that demand would have been futile as to directors *Bogolin and Ingham. See* Am. Cmplt. ¶¶88-95. Plaintiff does not allege that the directors in place at the time of the filing of his amended complaint (Heddle and Bradley) are interested or dependent. The proper board of directors for assessing futility of demand with respect to shareholder derivative claims contained in the amended complaint is the board in place at the time the amended complaint is filed. Three circumstances must exist to excuse a plaintiff from making demand under Fed. R. Civ. P. 23.1 when a complaint is amended after a new board of directors is in place: first, the original complaint must have been well pleaded as a derivative action; second, the original complaint must have satisfied the legal test for demand excusal; and third, the act or transaction complained of in the amendment is essentially the same as the act or transaction challenged in the original complaint. *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006); *In re Nyfix, Inc. Derivative Litig.*, 567 F. Supp. 2d 306, 310 (D. Conn. 2008) (proper board of directors for assessing futility of demand with respect to shareholder derivative claims contained in the

amended complaint is the board in place at the time the amended complaint is filed); *see Louisiana Mun. Police Employees Ret. Sys. v. Wynn*, 2014 WL 994616, at \*6 (D. Nev. Mar. 13, 2014) (applying Nevada law and concluding that director who retired before amended complaint was filed was irrelevant to determination of whether demand was futile); *see also Grossman v. Johnson*, 674 F.2d 115, 123 (1st Cir. 1982) (demand must be assessed at time derivative action is brought, "not afterward with the benefit of hindsight"); *Brody v. Chemical Bank*, 517 F.2d 932, 934 (2d Cir. 1975) (under rule governing derivative actions by shareholders, demand must be made upon directors in office at time amended complaint is filed).

These three factors are not satisfied here.  For the reasons stated in the memorandum in support of the Individual Defendants' motion to dismiss Plaintiff's original *Grampp II* complaint, the original complaint was not well pleaded, and did not satisfy the standards for demand futility, even if the subject matter of the two complaints were regarded as essentially the same (notwithstanding the new "gifting" allegations in the amended complaint).[6]  Given the *presumption* that directors (Heddle and Bradley) are disinterested, independent, and "faithful to their fiduciary duties," *Beam*, *supra*, 845 A.2d at 1048-1049, an absence of allegations suggesting otherwise contradicts Plaintiff's obligation to plead demand futility with particularity. *Shoen*, *supra*, 137 P.3d at 1183; *see also Gonzalez*, *supra*, 951 F.2d at 2 (noting that a "stockholder may not plead in general terms, hoping that, by discovery or otherwise," he can later establish that demand would have been futile).

---

[6] Although Plaintiff adds new "gifting" allegations for the first time in the amended complaint, JBI publicly disclosed the April 12, 2012 transfer of shares from Bordynuik to Ingham in its May 24, 2012 SEC filing, **Exh. 7**, more than a year before Plaintiff filed his *original* Grampp II complaint in this action in August 2013.

### 3.   Bogolin and Ingham's Insider Status Did Not Impair Their Independence.

Assuming for the sake of argument that departed board members Bogolin and Ingham are the persons whose independence is at issue, Plaintiff's demand futility arguments are without merit.  Plaintiff alleges that Bogolin and Ingham were incapable of making an independent and disinterested decision to pursue this litigation because they: (a) were executive "insiders" (Am. Cmplt. at ¶88); (b) were appointed by "JBI's controlling shareholder," Bordynuik (*id.* at ¶89); (c) served at Bordynuik's pleasure (*id.* at ¶90); and (d) received "substantial compensation" based on the "success of P2O" and "Bordynuik's knowledge of the P2O process" (*id.* at ¶92-95).  Also, Plaintiff alleges that Ingham is "clearly beholden to Bordynuik" on the basis of Bordynuik's transfer of 400,000 shares to Ingham as a gift.  *Id.* at ¶91.

When the original *Grampp II* complaint was filed, Bogolin was the company's CEO and Ingham was the CFO.  But a director's position as an executive officer does not deprive him of the necessary independence to consider a demand on its merits.  *Fagin v. Gilmartin*, 432 F.3d 276, 283 (3d Cir. 2005) ("The fact that a director is also an officer, without more, is insufficient to establish the director's interest or lack of independence."); *Israni v. Bittman*, 473 Fed. Appx. 548, 551 (9th Cir. 2012) (applying Nevada law and holding that demand was not excused based on corporation's employment of directors); *see also Jones v. Jenkins*, 503 F. Supp. 2d 1325, 1338 (D. Ariz. 2007) (director's position as CEO held insufficient to excuse pre-suit demand); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Lundgren*, 579 F. Supp. 2d 520, 524, 535-536 (S.D.N.Y. 2008) (President and CEO did not lack independence; mere fact director receives compensation does not excuse demand).  Indeed, if the rule were otherwise, "every

11

inside director would be disabled from considering a pre-suit demand." *In re Sagent Tech., Inc.,*

*Derivative Litig.*, 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003).[7]

> **4.    Bordynuik's Alleged Appointment of Bogolin and Ingham Did Not Undermine Their Independence.**

Even if it were accurate, Plaintiff's bare allegation that Bordynuik "personally appointed"

Ingham and Bogolin would be wholly inadequate to rebut the presumption of director

independence.  "[I]t is not enough to charge that a director was nominated by or elected at the

behest of those controlling the outcome of a corporate election . . . ."  *Aronson*, *supra*, 473 A.2d

at 816 (47% ownership and personal selection of directors held insufficient).  Indeed, courts have

held that voting power as high as 94% is inadequate to overcome the presumption of

independence, even when coupled with allegations that the directors and the dominant

shareholder "moved in the same social circles, attended the same weddings, developed business

relationships before joining the board, and described each other as 'friends.'"  *See Beam*, *supra*,

845 A.2d at 1051.[8]  Plaintiff alleges no social relationship among Bordynuik, Ingham and

Bogolin whatsoever, and even if he did, any such relationship would have to be "of a bias-

producing nature" for demand to be excused, such that "the non-interested director would be

---

[7] Plaintiff's allegation that Ingham and Bogolin did not qualify as independent directors according to NASDAQ standards (*see* Am. Cmplt. ¶88) is irrelevant.  *See In re Google, Inc. Shareholder Derivative Litig.*, 2013 WL 5402220, at *7 (N.D. Cal. Sept. 26, 2013) (holding that NASDAQ standard of "independent" is "not the applicable standard for analyzing demand futility"); *In re IAC/Interactive Corp. Sec. Litig.*, 478 F. Supp. 2d 574, 603 n.15 (S.D.N.Y. 2007) (recognizing that "independence" under SEC rules for audit committees is distinct from "independence" for demand futility purposes).

[8] *See also Kaster v. Modification Sys. Inc.*, 731 F.2d 1014, 1019-1020 (2d Cir. 1984) (holding that president and chairman's 71% ownership of voting stock, standing alone, was insufficient); *Stiegele*, *supra*, 2007 WL 4197496, at *14 (noting that majority voting power by one board member, without more, is insufficient to rebut presumption of independence); *Caviness*, *supra*, 229 F.R.D. at 361 (bald assertion that company's founder, chairman, and CEO controlled board held insufficient).

more willing to risk his or her reputation than risk the relationship with the interested director."
*See id.* at 1050 and 1052.

> **5. Bordynuik's Actions Regarding Bogolin and Ingham Were Governed by the Letter Agreement.**

Plaintiff next claims that Bogolin and Ingham are interested and dependent because they "serve the Board at Bordynuik's pleasure and may be appointed and removed by Bordynuik." Am. Cmplt. ¶88.  This allegation directly contradicts the express curtailment on Bordynuik's power in the Letter Agreement which prohibited him from voting his shares to appoint any individual (including Bogolin and Ingham) to the JBI Board, who is not a "Qualified Independent Director."  Moreover, Bordynuik is no longer a member of the JBI board (and had not been for more than a year before the original complaint was filed), and therefore had no authority to remove Ingham or Bogolin from their positions, as confirmed by JBI's Bylaws, which grant such authority exclusively to the Company's board of directors.[9]  Since Bordynuik lacked discretion and/or authority to appoint or remove Ingham or Bogolin, Plaintiff's allegation cannot raise a reasonable doubt as to Bogolin's or Ingham's disinterest or independence.

> **6.  Bogolin and Ingham's Receipt of Compensation is Insufficient to Undermine Their Disinterestedness or Independence.**

An officer or director's receipt of compensation or stock awards does not constitute a disabling interest unless there are particularized facts alleged that show the compensation was "unusual or uncustomary."  *Israni*, *supra*, 473 Fed. Appx. at 550 (applying Nevada law); *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988); *Caviness*, *supra*, 229 F.R.D. at 361 (CEO did not lack independence due to substantial compensation received from the company); *Fosbre v.*

---

[9] JBI's Bylaws authorize only the board of directors to remove or elect officers and set the terms of executive officers' compensation.  ***Exh. 14*** (JBI Bylaws) at §§ 3.01, 3.02, 3.05, 3.09.

*Matthews*, 2010 WL 2696615, at *5 (D. Nev. Jul. 2, 2010) ("allegations that directors are paid for their services as directors . . . without more, do not establish a disabling interest or lack of independence on the part of the director." [internal quotation marks and citation omitted]).

Only the Company's board of directors controls executive officers' compensation, according to JBI Bylaws, and "a board's decisions relating to executive compensation are the 'essence of business judgment.'" *Fosbre*, *supra*, 2010 WL 2696615, at *4 (quoting *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000)). Plaintiff does not allege that the compensation of Bogolin or Ingham was unusual or uncustomary. Neither Bordynuik nor Baldwin were board members when Plaintiff initiated this litigation and neither controlled Bogolin or Ingham's compensation while they were employed by JBI. Moreover, Plaintiff's vague suggestion that the board members' compensation is "based on" the success of the Company's operations likewise is insufficient to impair their independence or disinterest. *See In re E.F. Hutton Banking Practices Litig.*, 634 F. Supp. 265, 271 (S.D.N.Y. 1986) ("[w]e refuse to assume that all directors who receive such fees have a conflict," rendering a demand futile); *In re Coca-Cola Enters., Inc. Derivative Litig.*, 478 F. Supp. 2d 1369, 1380-1381 (N.D. Ga. 2007) (CEO did not lack independence despite being paid millions of dollars in salary and bonuses). Bogolin and Ingham's interest in the Company's success is shared equally by the Company and its shareholders. Having a financial incentive in the Company's success is not equivalent to self-dealing or a similar personal financial benefit that would excuse a pre-suit demand. *Aronson*, *supra*, 473 A.2d at 812 ("interest" not established in director who receives "benefit which devolves upon the corporation or all stockholders generally"); *In re Dow Chemical Co. Derivative Litig.*, 2010 WL 66769, at *8 (Del. Ch. Jan. 11, 2010) ("where a director is beholden to the *company* there is no reason to doubt her loyalty to that company"). In short, Plaintiff's

14

allegations on this point cannot withstand the indisputable facts, and therefore are insufficient to cast doubt on Bogolin's or Ingham's disinterest or independence.

### 7. Ingham's Receipt of Compensatory Shares Did Not Undermine His Independence.

Finally, Plaintiff alleges that Ingham is "clearly beholden to Bordynuik" because Bordynuik transferred 400,000 shares to Ingham.  Under the circumstances of Ingham's then-recent appointment as CFO, it may be inferred that the purpose of this transfer was compensatory, notwithstanding the "gifting" characterization.  Plaintiff fails to allege whether, or why, Ingham's receipt of these shares was unusual.  *See Israni, supra*, 473 Fed. Appx. at 550 (director's receipt of compensation alone does not excuse demand, where complaint failed to provide comparative data supporting allegation that compensation was unusual).  Plaintiff has not alleged a quid pro quo, or indeed any causal link or motive between the alleged misstatements and the transfer of shares.  *See Fosbre*, *supra*, 2010 WL 2696615, at *5 (in cases where demand is excused, circumstances *in addition to* the unusual compensation must cast doubt on the director's independence, such as where "a 'causal link' between the directors' compensation and the challenged [transaction] could be reasonably inferred"); *see In re American Int'l Group, Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 432 (S.D.N.Y. 2010) ("Without specific facts suggesting a lack of independence by the Board, receipt by directors of benefits and compensation as a result of Board membership is insufficient to excuse demand.") (quoting *Fink v. Komansky*, 2004 WL 2813166, at *7 (S.D.N.Y. Dec. 8, 2004)).

In addition, for the reasons discussed above, Bordynuik had no authority to appoint, remove, or dictate compensation for Ingham, or otherwise affect Ingham's employment, and therefore there is no plausible reason why the transfer of shares would impair the ability of Ingham to consider a demand by Plaintiff.  Practically, because Ingham was no longer an officer

15

or director of the Board at the time Plaintiff filed the amended complaint, he could suffer no consequences from his decision if Plaintiff had bothered to present a demand, nor would he have had any authority to take action on the Company's behalf.  To survive a Rule 12(b)(6) motion to dismiss, a claim must be "plausible on its face" because Plaintiff cannot sufficiently plead allegations that cast doubt on Bogolin's or Ingham's independence or disinterest.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court is not bound to accept as true "a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Where, as here, the facts alleged fail to "nudge [the] claims across the line from conceivable to plausible," the complaint must be dismissed.  *Id.* at 570.

### 8.     Plaintiff Shows No "Substantial Likelihood of Director Liability" Regarding Bogolin or Ingham.

The disinterestedness of Bogolin and Ingham could not possibly be impaired by their potential liability.  "[I]nterestedness because of potential liability can be shown only in those rare case[s] . . . where defendants' actions were so egregious that a substantial likelihood of director liability exists."  *Shoen, supra*, 137 P.3d at 1184 (internal quotation marks and citations omitted).  Under Nevada law, the personal liability of corporate directors and officers is statutorily limited to breaches of fiduciary duty that involve "intentional misconduct, fraud or a knowing violation of law."  Nev. Rev. Stat. § 78.138(7).[10]  In light of Nevada's statutory exculpation provision, "to demonstrate demand futility through a showing of a substantial likelihood of director liability,

---

[10] While a corporation may affirmatively opt out of this statutory limitation of liability by including a more expansive liability provision in its articles of incorporation, JBI has not done so, and Plaintiff does not allege otherwise.  *See Exh. 15*, Articles of Incorporation of 310 Holdings, Inc. (JBI's former name), § 6 (JBI officers or directors shall not be personally liable to the corporation or its stockholders other than for, in relevant part, "acts or omissions which involve intentional misconduct, fraud or a knowing violation of the law").

[the plaintiff] must plead particularized facts showing that the acts or omissions of the defendant directors involved intentional misconduct, fraud or a knowing violation of the law." *Fosbre, supra*, 2010 WL 2696615, at *6.

Plaintiff's allegations do not raise a substantial likelihood that Ingham or Bogolin, neither of whom are defendants, face liability. The alleged improper accounting of the Media Credits occurred in the third-quarter and year-end 2009 financial statements, which were later disavowed in May and June 2010. Ingham became a JBI officer more than 18 months later in December 2011 and was appointed to the board in May 2012. Bogolin was appointed as an executive in June 2012 and a board member in May 2013. Thus neither Ingham nor Bogolin had any involvement in the alleged improper accounting in 2009 or the subsequent restatements in 2010.

Similarly, the alleged "falsehoods about … the P2O process," Am. Cmplt. ¶99, are based on events that occurred between 2009 and 2011, prior to Ingham's or Bogolin's appointments, and Plaintiff does not allege that either engaged in any communications about the P2O process.[11] Am. Cmplt. ¶¶68-78. The only suggestion in the amended complaint of misconduct on the part of Bogolin and Ingham is the vague allegation that "the Board," without identifying any particular individual, "has consistently sat idly by, entranced by Bordynuik's words and constricted by his controlling power over the Company . . . ." *Id.* ¶78. This allegation does not even remotely suggest that these board members engaged in intentional misconduct or fraud, as required under Nevada law in order to establish a breach of fiduciary duty. Because there is no

---

[11] The amended complaint's vague reference to one or more Plastic2Oil "deals" that were "struck" in January 2012, shortly after Ingham's appointment as CFO, is an insufficient basis for any liability on his part, since the complaint does not allege that he was involved in any such "deals," which apparently related to operational issues outside of Ingham's presumed financial area of responsibility. The complaint does not even allege that the Company disclosed these "deals," much less specify what disclosures were made or why they were inaccurate. *See* Am. Cmplt. ¶75.

likelihood that Ingham or Bogolin will face liability, Plaintiff's failure to make a pre-suit demand is not excused on that ground.

In sum, the amended complaint should be dismissed for failure to satisfy Rule 23.1(b)(3)'s pleading requirements.

## B.  PLAINTIFF IS AN INADEQUATE SHAREHOLDER REPRESENTATIVE.

A shareholder who brings a derivative action to enforce corporate rights must "fairly and adequately represent the interests of shareholders . . . who are similarly situated . . . ."  Fed. R. Civ. P. 23.1(a); *G.A. Enters., Inc. v. Leisure Living Communities, Inc*., 517 F.2d 24, 27 (1st Cir. 1975) ("Rule 23.1 recognizes the binding effect of derivative litigation on all stockholders and the company, and accordingly forbids maintenance of such a suit by a plaintiff unable to provide fair and adequate representation.")

Courts consider a number of factors when evaluating the fitness of a particular plaintiff to enforce the rights of a corporation, including "plaintiff's unfamiliarity with the litigation" or "other litigation pending between the plaintiff and defendants."  *Quantum Tech. Partners II, L.P. v. Altman Browning and Co.,* 2008 WL 4525769, at *2 (D. Or. Oct. 2, 2008), *aff'd*, 436 Fed. Appx. 792 (9th Cir. 2011) (discussing the adequacy of a plaintiff representative in a derivative suit under Fed. R. Civ. P. 23.1 and Delaware law).

Plaintiff does not fairly and adequately represent other shareholders for three reasons. First, he apparently is so unfamiliar with significant corporate events (i.e., the changed composition of JBI's Board shortly after his original complaint was filed) that he filed a defective amended complaint without pleading demand futility as to the *current* board in pursuit of costly litigation that may financially cripple the Company.  Plaintiff's unfamiliarity with litigation is reason to find him an inadequate representative.  *Larson v. Dumke*, 900 F.2d 1363,

1367 (9th Cir. 1990) (plaintiff's unfamiliarity with litigation is one factor to determine adequacy of representation).

Second, Plaintiff's other entanglements with JBI – including his employment by JBI's competitor, whose principal is involved in litigation adverse to JBI and Pak-It – undermines his ability to impartially represent shareholders. *Guenther v. Pac. Telecomm., Inc.*, 123 F.R.D. 341, 345 (D. Or. 1988) ("it is well established that courts can and should consider 'outside entanglements' making it likely that the interests of the other stockholders will be disregarded in the management of the [derivative] suit"); *Quantum Tech. Partners*, *supra*, 2008 WL 4525769, at *7 (existence of "economic antagonisms between [the] representative and class," or "other litigation pending between the plaintiff and defendants," or "plaintiff's vindictiveness toward the defendants").

Having a personal interest in a direct competitor is precisely the sort of economic antagonism that makes a plaintiff an inadequate representative of shareholder interests. *See, e.g., Davis v. Comed*, 619 F.2d 588, 594 (6th Cir. 1980), and cases cited (explaining that economic antagonism typically involves "competition between two entities in which the derivative plaintiff is involved"); *Quirke v. St. Louis-San Francisco Ry. Co.*, 277 F.2d 705, 708 (8th Cir. 1960) (holding that plaintiff was improper representative in action attacking purchase by one railroad of another railroad's stock where plaintiff held stock in both railroads).

Third, Plaintiff's "infinitesimally small" share ownership, worth approximately ten dollars and representing about .0001% of the outstanding shares, undermines his ability to adequately represent absent shareholders in this derivative litigation.  Plaintiff incurred no cost in acquiring these shares. *Blum v. Morgan Guar. Trust Co. of New York*, 539 F.2d 1388, 1390 (5th Cir. 1976) (finding an "infinitesimally small" shareholder with 100 shares inadequate); *Robinson*

*v. Computer Servicenters, Inc.*, 75 F.R.D. 637, 642-643 (N.D. Ala. 1976) (*de minimus* ownership coupled with plaintiff's competition with the corporation and personal claims against it); *see also Owen v. Modern Diversified Indus., Inc.*, 643 F.2d 441, 443-444 (6th Cir. 1981) (plaintiff's *de minimus* stock ownership, when coupled with substantial debt investment in the corporation, made him an inadequate representative); *Chesterton v. Chesterton*, 1990 WL 150066, at *2 (D. Mass. Oct. 2, 1990) (noting relevancy of plaintiff's minimal ownership interest in cases dismissing derivative action when financial entanglements are at issue).  Plaintiff's share ownership should be considered in deciding a motion to dismiss for failure to comply with Rule 23.1.  *See*, *e.g.*, *Cohen v. Bloch*, 507 F. Supp. 321, 321–22, 324, 327 (S.D.N.Y. 1980) (dismissing claims for failure to comply with Rule 23.1's "fair and adequate representation" requirement).

Plaintiff's inconsequential stake in the litigation also raises serious doubt about his investment in pursuing this litigation, especially when considered along with his conflicts of interest.  *Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir. 1992) (plaintiff owning "infinitesimal" number of shares held inadequate where plaintiff was involved in other unrelated litigation against defendant); *see also Recchion ex rel. Westinghouse Elec. Corp. v. Kirby*, 637 F. Supp. 1309, 1315 (W.D. Pa. 1986) (holding that former employee who owned one share of the company's stock was inadequate where he had a pending wrongful discharge action against the company).

In short, Plaintiff's apparent lack of familiarity with significant corporate events, conflicts of interest, and *de minimus* share ownership undermine his ability to fairly and adequately represent the interests of other similarly-situated shareholders.  Plaintiff's inadequacy as a shareholder representative is grounds to dismiss the amended complaint.

### C. PLAINTIFF LACKS STANDING DUE TO HIS BELATED SHARE OWNERSHIP.

The amended complaint fails to comply with Fed. R. Civ. P. 23.1(b)(1) because Plaintiff was not "a shareholder . . . at the time of the transaction complained of" because he did not acquire JBI shares until *after* the "activities that constitute the primary basis of the complaint." *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 298 (2d Cir. 2003); *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1202 (N.D. Cal. 2007) ("derivative plaintiff has no standing to challenge . . . transactions that occurred prior to the time that plaintiff owned company stock"); *see also Keever v. Jewelry Mountain Mines, Inc.*, 688 P.2d 317, 318 (Nev. 1984) (holding that, under Nevada law, failure to satisfy the contemporaneous ownership requirement deprives a plaintiff of standing to bring a derivative action).

In evaluating whether a derivative plaintiff satisfies the contemporaneous ownership rule, the court should look to the date of the "activities that constitute the primary basis of the complaint." *In re Bank of N.Y. Derivative Litig.*, *supra*, 320 F.3d at 298. In other words, "a proper plaintiff must have acquired his or her stock in the corporation before the core of the allegedly wrongful conduct transpired." *Id.* A plaintiff lacks contemporaneous ownership where the disputed transaction is disclosed in SEC filings *prior* to plaintiff's purchase of stock. *Cadle v. Hicks*, 272 Fed. Appx. 676, 679 (10th Cir. 2008).

Here, Plaintiff obtained JBI shares on January 7, 2010, after the transaction that constitutes the primary basis of the amended complaint—*i.e.*, the purchase and erroneous valuation of the Media Credits disclosed in the Form 10-Q filed on November 16, 2009. Because Plaintiff acquired his stock after the SEC disclosure, he did not own shares at the time of the disputed transaction.

21

Plaintiff cannot rely on a theory of continuing harm to establish ownership at the time of the challenged transaction if he did not own shares at the time of the initial wrongful event. *Weinhaus v. Gale*, 237 F.2d 197, 200 (7th Cir. 1956) (rejecting theory of a "continuing wrong" when determining compliance with the contemporaneous ownership rule).  Although JBI filed its 2009 Form 10-K in March 2010, after Plaintiff acquired shares, the filing was merely a continuation of its previously disclosed valuation of the Media Credits.  In other words, because the valuation "assume[d] [its] wrongful character as of the time of the initial event," *i.e.,* the November 16, 2009 filing of the Form 10-Q, "which antedated plaintiff's gaining shareholder status," Plaintiff lacks standing and his claim must be dismissed on that basis.  *See Curtis v. Brown*, 2007 WL 2590452, at *4 (D. Colo. Sept. 4, 2007) (quoting 7C Charles Alan Wright, et al., *Fed. Prac. and Proc.* § 1828).  Thus it makes no difference if JBI made subsequent "misrepresentations" about the same valuation that previously had been disclosed in its November 2009 Form 10-Q.  "Federal courts generally have rejected the contention that the entire series of events constitutes a single transaction—the so-called 'continuing wrong' notion—entitling plaintiff to bring suit for injuries suffered by the corporation subsequent to plaintiff's acquisition of stock."  *Weinhaus, supra,* 237 F.2d at 199-200; *see also Blasband v. Rales*, 971 F.2d 1034, 1046 (3d Cir. 1992) (quoting 7C Charles Alan Wright, *et al.*, *Federal Practice and Procedure* §1828, at 65 (2d ed. 1986)); *In re Bank of N.Y. Derivative Litig.*, *supra*, 320 F.3d at 298.

Simply put, a plaintiff who fails to satisfy the threshold requirement of contemporaneous ownership lacks standing to bring a shareholder derivative action.  *Keever*, *supra*, 688 P.2d at 318; *Sprando ex rel. Int'l Game Tech. v. Hart*, 2011 WL 3055242, at *2 (D. Nev. Jul. 22, 2011).  And Plaintiff's allegation that he was a shareholder of JBI "at the time of the wrongdoing" does

not solve his problem.  *Verisign*, *supra*, 531 F. Supp. 2d at 1202 (rejecting as inadequate

derivative plaintiffs' allegation that they owned company stock "during the Relevant Period").

For this additional reason, the amended complaint must be dismissed.

> **D.     PLAINTIFF'S CLAIMS ARE EITHER TIME-BARRED OR UNACCOMPANIED BY DAMAGES.**

Drafted as a single count, Plaintiff has actually raised two breach-of-fiduciary duty

claims.  The first claim involves "improper accounting" of the Media Credits in the two 2009

SEC filings ("Media Credits Claim") and the second involves "falsehoods about … the P2O

process" ("P2O Claim").  Am. Cmplt., Count I, and ¶99.  These are distinct claims because they

involved different conduct, occurred at different times, involved different evidence, and would

have resulted in different judicial conclusions, *see Peterson v. Regina*, 935 F. Supp. 2d 628, 637

(S.D.N.Y. 2013), and therefore should be analyzed separately.

> **1.     Plaintiff's Media Credits Claim is Time-Barred.**

The law of Nevada (the state of JBI's incorporation) governs Plaintiff's breach of

fiduciary duty claim and provides the relevant statute of limitation.  *Harrison v. NetCentric

Corp.,* 744 N.E.2d 622, 628-29 (Mass. 2001) ("the law of the state of incorporation governs

claims concerning the internal affairs of a corporation, including the treatment of alleged

breaches of fiduciary duty"); *Hayat v. Al-Mazeedi*, 2011 WL 1532109, at *3 (Mass. Super., Jan.

10, 2011) (state of incorporation determines law applicable to breach of duty claim).

Nevada law (and, coincidentally, Massachusetts law[12]) provides a three-year limitations period for bringing a breach of fiduciary duty claim, which accrues when plaintiff knew, or reasonably should have known, of the potential cause of action. Nev. Rev. Stat. § 11.190(3)(d); *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) (applying three-year statute of limitations to breach of fiduciary duty claim in derivative action); *Nev. State Bank v. Jamison Family P'ship*, 801 P.2d 1377, 1382 (Nev. 1990); *Golden Nugget, Inc. v. Ham*, 646 P.2d 1221, 1223 (Nev. 1982) (three-year period begins to run as soon as the plaintiff knows or reasonably should know of the potential cause of action); *Siragusa v. Brown*, 971 P.2d 801, 806 (Nev. 1998).

This Court may consider, at the motion-to-dismiss stage, whether Plaintiff's claim for improper accounting is time-barred because JBI's May 2010 and July 2010 disclosures are undisputed. *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir. 1987) ("Although factually based, [statute of limitations] issues may be determined as a matter of law where . . . the underlying facts are admitted or undisputed."); *Menowitz v. Brown*, 991 F.2d 36, 42 (2d Cir. 1993) (holding that "plaintiffs were put on inquiry notice of their claims by the very SEC-mandated disclosure documents they rely upon in their complaints").

---

[12] *RTR Technologies, Inc. v. Helming*, 707 F.3d 84, 90 (1st Cir. 2013) (holding that three-year statute of limitations applies to tort claims including breach of fiduciary duty claims and that the "discovery rule properly pertains only to those plaintiffs whose injuries are 'inherently unknowable'"). Similar to Nevada law, the law in Massachusetts is that a "plaintiff need not know the extent of the injury" or know that the defendant engaged in the questioned conduct for the cause of action to accrue. *Williams v. Ely,* 668 N.E.2d 799, 804 (Mass. 1996) (citations omitted).

Plaintiff's derivative claims belong to the Company,[13] which necessarily was aware of the incorrect booking of the Media Credits when, on May 21, 2010, JBI warned investors that the third-quarter 2009 and year-end 2009 financial statement "should no longer be relied on," ceased raising capital based on the erroneous financial statement in May 2010, and unambiguously stated that "the Company has determined that there were errors in the original accounting for . . . the valuation of media credits" that resulted in an $11 million decrease in assets and equity on July 9, 2010.

JBI's disclosures regarding the Media Credits placed shareholders on "inquiry notice," which triggered the time for their exercise of reasonable diligence in investigating potential claims concerning that transaction or corporate status. *Kravetz v. U.S. Trust Co.*, 941 F. Supp. 1295, 1309 (D. Mass. 1996); *see also Semerenko v. Cendant Corp.*, 223 F.3d 165, 180 & n.8 (3d Cir. 2000) (announcement warning investors to not rely on prior financial statements and auditor's report after discovery of accounting irregularities made any future reliance on its prior financial statements or audit reports unreasonable as a matter of law); *Brigand v. Van Wagoner Funds, Inc.*, 2009 WL 2175623, at *5 (D. Nev. Jul. 16, 2009) (applying Nevada law and holding that disclosures in corporation's annual reports put the plaintiff on notice of inaccuracies for statute of limitations purposes). The "inquiry notice" test is an objective one where the

---

[13] *In re Maxim Integrated Prods., Inc., Derivative Litig.*, 574 F. Supp. 2d 1046, 1071 (N.D. Cal. 2008). "In shareholder's derivative suits, the alleged wrongs to the company determine the relevant statute of limitations." *Kirley v. Kirley*, 521 N.E.2d 1041, 1043 (Mass. App. Ct. 1988). Had Plaintiff, on August 9, 2013, made a demand on the Company, rather than pursue a derivative action, the Company could have responded that it had no ability to pursue a claim against the Individual Defendants because such an action would be time-barred. As Plaintiff's present claim is derivative only and for the benefit of the Company, that claim is also time-barred. Allowing derivative actions to proceed where a corporation's direct action must fail would create a rule that would allow corporations to circumvent periods of limitations by "encouraging" the use of derivative actions in place of direct actions.

knowledge imputed to the investors is clear from the pleadings and the public disclosures themselves. *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350, 352 n.3 (2nd Cir. 1993) (citations omitted). By no later than July 9, 2010, Plaintiff was capable of perceiving the general basis for the claims he now alleges; thus, his claims are time-barred because he did not bring them within three years of this date. *See Dodds*, *supra*, 12 F.3d at 351; *see also Kravetz*, *supra*, 941 F. Supp. at 1305-09; *In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*, 850 F. Supp. 1105, 1132-33 (S.D.N.Y. 1993); *Lenz v. Associated Inns & Rests. Co. of Am.*, 833 F. Supp. 362, 370 & n.7 (S.D.N.Y. 1993).

In *Schmidt v. Skolas*, 2013 WL 4051205 (E.D. Pa. Aug. 12, 2013), the court dismissed derivative breach of duty claims very similar to those brought by Plaintiff in this case because "all of the relevant transactions had occurred and been publically announced, through a combination of updates from [the Company], public SEC filings, and press releases . . . . [and it] is not clear what more information Plaintiff wanted." 2013 WL 4051205, at *7. The court also rejected the possibility that the statute of limitations was tolled by fraudulent concealment, stating that the plaintiff would be "hard-pressed to point to any act of concealment" given that all the transactions were announced publicly and filed with the SEC. *Id.* Here, Plaintiff makes no allegation that the Company fraudulently concealed the overstatement of assets after May-July 2010, and in any event, "there is no legal authority under Nevada law for the common law doctrine of equitable tolling." *See Quinn v. Elliott*, 1996 WL 233144, at *3 (9th Cir. May 7, 1996) ("the only Nevada case law that addresses equitable tolling involves specific statutory authority for the tolling of a statute of limitations").

To *any* reasonable investor under *any* circumstances, the May and July 2010 SEC filings were not just "storm warnings" but constituted notice that the storm had already hit. *See*

*Reisman v. KPMG Peat Marwick LLP*, 965 F. Supp. 165, 171 (D. Mass. 1997) (finding that the company's public SEC filing "was the first sprinkle of rain that should have triggered [the plaintiff's] duty to investigate in a reasonably diligent manner").  Therefore, as a matter of law, Plaintiff's Media Credits Claim is time-barred.

### 2.  Plaintiff Lacks Standing to Assert His "P2O" Claim, Which is Unaccompanied by Any Damages.

The only damages referenced in the amended complaint relate to alleged defense costs, indemnity costs, litigation costs, "costs associated with restating JBI's financial statements" in order to correct the Media Credits valuation, and "costs incurred for finding and recruiting new executives and directors due to the removals required by the SEC final judgment."  Am. Cmplt. ¶100.  These damages were not caused by any P2O-related representations.  Rather, all damages alleged in the amended complaint, including the $150,000 SEC fine, are attributed to the Media Credits Claim.  Lacking the essential element of damages, the claim for "falsehoods about … the P2O process" must be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of standing and failure to state a valid claim.

### E.  PLAINTIFF FAILS TO PLEAD INTENTIONAL CONDUCT AND TO PLEAD FRAUD WITH PARTICULARITY.

Nevada law is unique in the extraordinarily high statutory standard it imposes on shareholders suing directors and officers for breach of fiduciary duty.  Section 78.138(7) of Nevada's corporate code provides that a director or officer of a Nevada corporation "is not individually liable to the corporation or its stockholders . . . for any damages as a result of any act or failure to act in his or her capacity as a director or officer unless it is proven that" he breached his or her fiduciary duties and that the "*breach of those duties involved intentional misconduct, fraud or a knowing violation of law*."  Nev. Rev. Stat. § 78.138(7) (emphasis added).

As the courts have recognized, "Nevada law statutorily exculpates directors and officers from personal liability for breach of fiduciary duty unless the act or failure to act constituting the breach 'involved intentional misconduct, fraud or a knowing violation of the law." *Fosbre*, *supra*, 2010 WL 2696615, at *6; *see also Amerco Derivative Litig., supra,* 252 P.3d at 700-701 ("[T]o hold 'a director or officer . . . individually liable,' the shareholder must prove that the director's breach of his or her fiduciary duty of loyalty 'involved intentional misconduct, fraud or a knowing violation of law.'"); *Strickland v. Hongjun*, 2011 WL 2671895, at *7-8 (S.D.N.Y. Jul. 8, 2011) (same, applying Nevada law).

It is the law of this Circuit that breach of fiduciary duty claims based on allegations of fraud trigger application of Rule 9(b). *See, e.g., Gerber v. Bowditch*, 2006 WL 1284232, at *41-44 (D. Mass. May 8, 2006) (applying Rule 9(b) to breach of fiduciary duty claim sounding in fraud); *Sachs v. Sprague*, 401 F. Supp. 2d 159, 170 n.15 (D. Mass. 2005) ("Plaintiffs' claims alleging intentional breaches of fiduciary duties are subject to the heightened pleading requirements of Rule 9(b)"); *In re Stratus Computer, Inc. Sec. Litig.*, 1992 WL 73555, at *7 (D. Mass. Mar. 27, 1992) (applying Rule 9(b) to derivative suit alleging breach of fiduciary duty claims that sounded in fraud). Here, it is unnecessary to assess whether the allegations concerning misstatements "sound in fraud," because any claim for breach of fiduciary duty against a director of a Nevada corporation must sufficiently allege fraud or intentional misconduct pursuant to statute. *See Rapaport v. Soffer*, 2012 WL 2522069, at *14 (D. Nev. Jun. 29, 2012) (because Section 78.138(7) requires "intentional misconduct, fraud, or a knowing violation of the law," it triggers application of Fed. R. Civ. P. 9(b)).

The First Circuit has been "especially rigorous" in enforcing the particularized pleading requirements of Rule 9(b). *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193-194 (1st Cir.

1999).  The Rule's particularity requirement serves a number of salutary purposes—providing a defendant with fair notice of a plaintiff's claim so as to prepare a defense, safeguarding his reputation from improvident charges of wrongdoing, and protecting him against strike suits, among them.  *See McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 229 n.2 (1st Cir. 1980) (rule is necessary to protect defendants' reputation); *see also Sutton v. Culver*, 204 F. Supp. 2d 20 (D. Maine 2002) (rule enables defendants to prepare a response).  Courts have not hesitated to dismiss complaints that do not meet these requirements.[14]

To satisfy Rule 9(b), Plaintiff is required to allege "*particularized* facts showing that" directors or officers "engaged in 'intentional misconduct, fraud or a knowing violation of the law.'" *Israni, supra*, 473 Fed. Appx. at 551 (emphasis added).  To survive a motion to dismiss, a complaint alleging fraud must specify (1) the statements that the plaintiff contends were fraudulent; (2) the identity of the speaker; (3) where and when the statements were made; and (4) why the statements were fraudulent.  *Fitzer v. Security Dynamics Techs.*, 119 F. Supp. 2d 12, 18 (D. Mass. 2000) (citing *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997)); *Gelfer v. Pegasystems, Inc.*, 96 F. Supp. 2d 10, 13 (D. Mass. 2000).

### 1.      Plaintiff Failed to Plead That Baldwin Engaged in Intentional Misconduct.

Plaintiff's breach of fiduciary duty claim should be dismissed as to Baldwin, pursuant to Rule 12(b)(6), because Plaintiff fails to plead with particularity that Baldwin engaged in

---

[14] *See, e.g., In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 372-73 (S.D.N.Y. 2007) ("Pursuant to the heightened pleading standard of Rule 9(b) . . . securities fraud actions based on an 'an unsupported general claim' constitute 'bare pleadings' that cannot survive a motion to dismiss.") (quoting *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72-73 (2d Cir. 2001)); *Tobias v. First City Nat. Bank & Trust Co.*, 709 F. Supp. 1266, 1277 (S.D.N.Y. 1989) (dismissal of securities fraud claim that did not specify which defendant made what representation and under what circumstances, how the plaintiff investors were misled by the alleged misrepresentations, and what the defendants obtained as a consequence of their alleged fraud failed to satisfy the particularity rule).

"intentional misconduct, fraud, or a knowing violation of the law," as required by Nevada Statute § 78.138(7).  Plaintiff alleges in a vague and conclusory manner that Baldwin "knew the valuation was false and inaccurate when [he] certified the . . . 10-K, and [he] did so with the intent to mislead and deceive JBI investors as to the true net worth of the Company."  Am. Cmplt. ¶39; *see also* ¶62 (alleging that Baldwin "was fully aware that they were improperly valued").  Elsewhere, Plaintiff alleges that Baldwin made "willful misrepresentations about the value of the Media Credits at JBI's annual General Meeting."  Am. Cmplt. ¶65.  But the amended complaint fails to allege any *facts* from which a reasonable person would conclude that he had such knowledge.  *See, e.g., N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) ("precedent in this circuit . . . is clear: The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading").  Baldwin was not JBI's Chief Financial Officer when the Media Credits were purchased, nor when the first allegedly erroneous financial statement was issued in November 2009.  Am. Cmplt. ¶16 ("Baldwin was CFO of JBI from January 1, 2010 to April 6, 2011"); ¶38 (first erroneous financial statement filed November 16, 2009).  Nor is Baldwin alleged to have had any interaction with JBI's then-auditor (Gately & Associates, LLC) or the company's consultant who purportedly "expressed concern to Bordynuik."  *Id*. at ¶48, 50, 55-58.  Therefore, the amended complaint fails to plead Baldwin's *scienter* with the requisite degree of particularity, and must be dismissed on that basis.

### 2.      Plaintiff Failed to Plead Circumstances of the Alleged Fraud with Particularity.

With respect to Bordynuik, the amended complaint falls short of this standard in at least two respects.  Plaintiff's description of JBI's disclosures about its fuel processing technology reads like a mystery novel.  The amended complaint alleges that on July 9, 2009, "Bordynuik put out a press release saying the Company 'Files Patent Application for Plastic2Oil Technology.'" Am. Cmplt. ¶68.  However, this allegation fails to provide a factual basis regarding why this statement was false.[15]  Similarly, Plaintiff alleges that "in April 2010, Bordynuik told shareholders that he had an offer from Somerset Refinery to purchase oil from his P2O process," but Plaintiff fails to state *how* Bordynuik made this statement (*e.g.*, by phone or in a press release), and again, fails to provide a sufficient factual basis for why it was false.[16]  Am. Cmplt. ¶69.  Moreover, Plaintiff alleges that Bordynuik "struck" "deals," some of which were "tout[ed]" in press releases, relating to the Company's Plastic2Oil technology.  Am. Cmplt. ¶¶70, 75. These allegations are insufficiently detailed because, among other things, they fail to say how many press releases there were, when they were issued, precisely what the releases said (including the disclosed terms of the "deals"), or why any statements made in the releases were false.

---

[15] Contrary to Plaintiff's claim, any omission of disclosures about patent applications in JBI's unidentified "SEC filings" does not constitute an "admission" that "no patent protection was ever sought," in the absence of any allegation that reporting companies are required to disclose all patent applications in all SEC filings.  Am. Cmplt. ¶68.

[16] Although the amended complaint states that the refinery was "shut down" when this statement was made, Am. Cmplt. ¶69, this fact in and of itself would not necessarily mean the quoted statement was false, since, for instance, the shutdown may have been temporary, or the offer may have been made prior to, and without knowledge, of the shutdown.  Plaintiff does not allege, among other things, that the offer to buy fuel from JBI was not made.

Plaintiff's vague and conclusory allegations that the deals "fell apart" or "vanished," or constituted "made up stories," *id.* ¶70, amount to mere name calling, and provide inadequate notice regarding why the unspecified statements in the unidentified press releases were false. For example, Plaintiff does not indicate whether the "deals" were the subject of written disclosures by JBI (by press release or otherwise) and does not allege whether the "deals" were imaginary or simply invalid. *See* Am. Cmplt. ¶75.  Likewise, Plaintiff does not allege *why* or *how* it was false or misleading for Bordynuik to say: (a) in April 2010 that "the only step left to commercial operations [sic] was getting a simple permit from the New York Department of Environmental Conservation," Am. Cmplt. ¶71, or (b) that JBI made sales to "a company called Coco Asphalt," *id.* at ¶73.  At best, these statements are merely "ambiguous," Plaintiff claims, *id.*, and therefore not actionable.  Similarly, Plaintiff's vague allegations about "discrepanc[ies]" in financial numbers in JBI's November 21, 2011 Form 10-Q and that these numbers are "not altogether clear," *id.* at ¶74, fails to identify any particular false statement in this filing, or explain whether or why any such statement was false.  Plaintiff is required to plead "the statements that [he] contends were fraudulent" and "why the statements were fraudulent." *Fitzer*, *supra*, 119 F. Supp. 2d at 18.

Plaintiff's challenges to certain forward-looking statements are also vague.  For example, Plaintiff alleges that Bordynuik had a "quarterly habit of saying that he expected commercial production within one quarter since Q1 2010 and then resetting in every next quarter to say commercial product was still one quarter away," Am. Cmplt. ¶70, and that Bordynuik "said he planned" to build 2,500 fuel processers in 2009, *id.* at ¶77.  In making such forward-looking statements, Bordynuik and JBI were afforded a safe harbor: Plaintiff must allege specific facts which illustrate that the company's predictions lacked a reasonable basis.  *Shaw v. Digital Equip.*

*Corp.*, 82 F.3d 1194, 1211 n.21 (1st Cir. 1996) (projections made with reasonable basis and in good faith are protected by SEC safe harbor provision).  Once a forward-looking statement is made, if the statement "becomes untrue" because of "subsequent events," as long as the original statement was made in good faith, the speaker does not have "a duty to update" the statement. *Selbst v. McDonald's Corp*., 2005 WL 2319936, at *25 (N.D. Ill. Sep. 21, 2005).  Therefore, a plaintiff must allege "specific facts which illustrate that [the company's] predictions lacked a reasonable basis."  *Arazie v. Mullane*, 2 F.3d 1456, 1468 (7th Cir.1993).  Here, Plaintiff fails to identify when the forward-looking statements about projected commercial production were made and fails to plead specific facts demonstrating that these statements lacked a reasonable basis.

To defend themselves against Plaintiff's allegations, the Individual Defendants must know the "who, what, when and where" of the conduct that he deems to constitute breaches of their fiduciary duties.  The amended complaint keeps all of that a mystery, to the prejudice of the Individual Defendants.  In sum, the amended complaint does not satisfy the particularity requirement imposed by Rule 9(b) and should be dismissed.

## F.    PERSONAL JURISDICTION OVER BALDWIN IS LACKING.

On June 23, 2014, the Court ruled that it "will address Baldwin's argument concerning personal jurisdiction, if necessary, after deciding any other arguments for dismissal that may be presented in a motion to dismiss . . . ."  To that end, Defendants incorporate into this Memorandum the arguments made in Section V of their Memorandum of Law In Support of Their Motion to Dismiss filed on February 19, 2014 (Doc. #30, pps. 34-39), as though fully restated herein.  Defendants do not waive the argument that this Court lacks personal jurisdiction over Baldwin, but rather, pursuant to this Court's order, defer further argument to a time as further directed by this Court.

# IV.   CONCLUSION

For the forgoing reasons, the amended complaint should be dismissed with prejudice.


Respectfully submitted this 28th day of July 2014,

/s/ John G. Wheatley
John G. Wheatley, BBO #670989
Matthew C. Welnicki, BBO #647104
MELICK & PORTER, LLP
One Liberty Square, 7th Floor
Boston, MA 02109
(617) 523-6200
jwheatley@melicklaw.com
mwelnicki@melicklaw.com

Michael R. MacPhail
Katherine W. Wittenberg
FAEGRE BAKER DANIELS LLP
1700 Lincoln Street Suite 3200
Wells Fargo Center
Denver, CO 80202
303-607-3692
Michael.MacPhail@FaegreBD.com
Katherine.Wittenberg@FaegreBD.com

*Counsel for John Bordynuik and Ronald C. Baldwin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing and

paper copies will be sent via U.S. first class mail to those indicated as non-registered participants

on July 28, 2014.

<u>/s/ John G. Wheatley               </u>