UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ERWIN GRAMPP, derivatively on behalf of JBI, INC.,<br><br>                     Plaintiff,<br>v.<br><br>JOHN BORDYNUIK and RONALD C. BALDWIN,<br><br>                     Defendants,<br>   and<br><br>JBI, INC.<br>                     Nominal Defendant. | Civil Action No.: 1:13-cv-11906-MLW |

**DECLARATION OF LIGAYA T. HERNANDEZ IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS THE AMENDED SHAREHOLDER DERIVATIVE COMPLAINT**

Ligaya T. Hernandez declares, under penalty and perjury:

1. I am a member of Hynes Keller & Hernandez LLC, counsel for Plaintiff in the above-captioned action. I submit this Declaration in Support of Plaintiff's Opposition to the Individual Defendants' Motion to Dismiss the Amended Shareholder Derivative Complaint.

2. Attached hereto as Exhibit A is a true and correct copy of page 14 of JBI, Inc.'s Form 10-K filed with the SEC on March 15, 2013.

3. Attached hereto as Exhibit B is a true and correct copy of the Final Judgment as to Defendant Ronald Baldwin, Jr. entered in the SEC Action on October 16, 2013.

4. Attached hereto as Exhibit C is a true and correct copy of page 28 of JBI, Inc.'s Form 10-K filed with the SEC on March 15, 2013.

Dated: August 22, 2014                    /s/Ligaya T. Hernandez
                                          Ligaya T. Hernandez

1

# EXHIBIT A

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, DC 20549

# FORM 10-K

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2012

or

☐ **TRANSITION REPORT UNDER SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

Commission file number: 000-52444

**JBI, Inc.**
*(Exact name of registrant as specified in its charter)*

| Nevada | 90-0822950 |
|---|---|
| *(State or other jurisdiction of incorporation or organization)* | *(IRS Employer Identification No.)* |

20 Iroquois Street
Niagara Falls, NY 14303
*(Address of Principal Executive Offices) (Zip Code)*

Registrant's telephone number: (716) 278-0015

Securities registered pursuant to Section 12(b) of the Act: None.

Securities registered pursuant to Section 12(g) of the Act: Common Stock, par value $0.001 per share.

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☐   No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Exchange Act. Yes ☐   No ☒

**Other Businesses**

*Data Recovery & Migration*

In June 2009, we purchased certain assets from John Bordynuik, Inc., a corporation founded by John Bordynuik, our former Chief Executive Officer and current Chief of Technology. The assets acquired from John Bordynuik, Inc. included tape drives, computer hardware, servers and a mobile data recovery lab to read and transfer data from magnetic tapes and these assets are used in our Data Recovery & Migration business.

Magnetic tapes were previously a primary media for data storage. Because of its cost effectiveness, magnetic tape was widely used by government, scientific, educational and commercial organizations for decades. Over time, these tapes can become vulnerable to deterioration when exposed to natural elements, which can render the tapes difficult to read or unreadable using the original tape-reading equipment. Our Data Business involves reading old magnetic tapes, interpreting and restoring the data where necessary and transferring the recovered data to storage formats used in current systems. The recovered data is verified for accuracy and returned to customers in the media storage format of their choice. Our process gives customers the ability to conveniently catalogue and safely archive difficult-to-retrieve data on readily accessible, contemporary storage media. Users of these services generally include businesses or organizations that have historically stored information on magnetic tape, such as government agencies, oil and gas companies and academic institutions.

The process for data recovery was developed and is very highly dependent on John Bordynuik, the founder of our company. The significance of the Data Business's reliance on Mr. Bordynuik has been a key driver to the Data Recovery & Migration Business achieving significant revenue in 2012 and no revenue in 2011 and 2010.

In light of our business strategy to increase the focus on our P2O business, we anticipate that revenues and profits generated from our Data Business operations will represent a decreasing share, if any, of our total revenues and profits in future reporting periods. Due to these factors, the Company recorded an impairment of $36,500 during the first quarter of 2012 related to the assets of the Data Business.

*Pak-It*

From September 2009 until February 2012, through Pak-It, we were engaged in the manufacture of cleaning chemicals. As previously reported, we sold substantially all of the assets of this business in February 2012 because management felt that Pak-It's business was no longer aligned with our strategic focus on our P2O business. For all periods reported, the results of operations of Pak-It have been recorded as discontinued operation, as recorded in Footnote 19 of the Consolidated Financial Statements.

*Javaco*

From August 2009 until July 2012, through Javaco, we were a retailer and wholesale distributor of equipment, hardware and tools for the safety, maintenance and construction industries. As previously reported, in July 2012, we closed Javaco and liquidated substantially all of the fixed assets and inventory because management felt that Javaco's business was no longer aligned with our strategic focus on our P2O business. For all periods reported, the results of operations of Javaco have been recorded as discontinued operations, as recorded in Footnote 19 of the Consolidated Financial Statements.

**Intellectual Property**

To ensure the protection of our proprietary technology, we have applied for patent protection for both the P2O process and P2O processor. As of March 14, 2013, no patents have been issued. Management anticipates filing additional patent applications for various aspects of our P2O process in the near future. A lack of patent protection could have a material adverse effect on our ability to gain a competitive advantage for our process and processors, since it is possible that our competitors may be able to duplicate the P2O process for their own purposes. We also rely on our trade secrets to provide protection from portions of our process and proprietary catalyst. See "Risk Factors—Risks Related to Our Business".

We also hold a U.S. patent relating to our Data Business for the recovery of tape information.

**Research and Development**

Given our strategic focus on developing our P2O business, we anticipate that our research and development activities in the short to medium-term will mostly relate to our P2O processors and the construction, operation and systems management of those processors. Specifically, we will seek to increase the operational capabilities and performance of our P2O processors as opportunities arise. Research and development expenditures were $445,945, $1,452,932 and $761,231 in 2012, 2011 and 2010, respectively.

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

RONALD BALDWIN, JR.,

    Defendant.

C. A. No. 1:12-cv-10012-RBC

**FINAL JUDGMENT AS TO DEFENDANT RONALD BALDWIN, JR.**

The Securities and Exchange Commission having filed a Complaint and Defendant Ronald Baldwin, Jr. ("Defendant") having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or

by use of the mails, directly or indirectly:

(a) to employ any device, scheme, or artifice to defraud;

(b) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a) to employ any device, scheme, or artifice to defraud;

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Case 1:12-cv-10012-RBC Document 40 Filed 10/16/13 Page 3 of 8

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, successors or assigns, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from aiding and abetting any violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 13a-1 and 12b-20 thereunder [17 C.F.R. §§ 240.13a-1 and 240.12b-20] by providing substantial assistance to an issuer that fails to file, in accordance with such rules and regulations as the Commission prescribes as necessary or appropriate, such information and documents as the Commission requires to keep reasonably current the information and documents required to be included in or filed with an application or registration statement filed pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or such annual or quarterly reports as the Commission prescribes, or by failing to include, in addition to the information expressly required to be included in any statement or report filed pursuant to Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading.

IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, successors or assigns, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from aiding and abetting violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)] by:

(a) knowingly providing substantial assistance to an issuer which has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], in failing to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the issuer; or

(b) knowingly providing substantial assistance to an issuer which has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], in failing to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions are executed in accordance with management's general or specific authorizations; (ii) transactions are recorded as necessary (A) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (B) to maintain accountability for assets; (iii) access to assets is permitted only in accordance with management's general or specific authorization; and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

V.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, successors or assigns, and all persons in

active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 13(b)(5) of the Exchange Act [15 U.S.C. §§ 78m(b)(5)] by failing to implement a system of internal accounting controls, or by knowingly falsifying, directly or indirectly, or causing to be falsified, books, records and accounts as described in Section 13(b)(2) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A)].

VI.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, successors or assigns, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1] by falsifying, or causing to be falsified, any book, record or account subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

VII.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, successors or assigns, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14] by falsely signing a certification, for any periodic report required to be filed pursuant to Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], that to the best of their knowledge, the report does not contain material misstatements or omit material information.

Case 1:12-cv-10012-RBC Document 40 Filed 10/16/13 Page 6 of 8

VIII.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], Defendant is prohibited for five years following the date of entry of this Final Judgment from acting as an officer or director of any issuer that has a class of securities registered under Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

IX.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that Defendant shall pay a civil penalty in the amount of $25,000 to the Securities and Exchange Commission pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77(t)(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. Defendant shall make this payment pursuant to the terms of the payment schedule set forth in paragraph X below after entry of this Final Judgment.

Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of

this Court; Defendant's name as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant. The Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury. Defendant shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

X.

Defendant shall pay the total penalty due of $ 25,000 in four installments to the Commission according to the following schedule: (1) $10,000 within 14 days of entry of this Final Judgment; (2) $5,000 within 120 days of entry of this Final Judgment plus post-judgment interest pursuant to 28 U.S.C. § 1961; (3) $5,000 within 240 days of entry of this Final Judgment plus post-judgment interest pursuant to 28 U.S.C. § 1961; (4) and $5,000 within 360 days of entry of this Final Judgment plus post-judgment interest pursuant to 28 U.S.C. § 1961. Payments shall be deemed made on the date they are received by the Commission and shall be applied first to post judgment interest, which accrues pursuant to 28 U.S.C. § 1961 on any unpaid amounts due after 14 days of the entry of Final Judgment. Prior to making the final payment set forth herein, Defendant shall contact the staff of the Commission for the amount due for the final payment.

If Defendant fails to make any payment by the date agreed and/or in the amount agreed according to the schedule set forth above, all outstanding payments under this Final Judgment, including post-judgment interest, minus any payments made, shall become due and payable

Case 1:12-cv-10012-RBC   Document 40   Filed 10/16/13   Page 8 of 8

immediately at the discretion of the staff of the Commission without further application to the Court.

XI.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that the Consent of Ronald Baldwin, Jr. is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

XII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

Dated: OCT 1 6 2013

UNITED STATES MAGISTRATE JUDGE

HON. ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE
United States District Court
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 7420
Boston, Massachusetts 02210

8

# EXHIBIT C

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, DC 20549

# FORM 10-K

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2012

or

☐ **TRANSITION REPORT UNDER SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

Commission file number: 000-52444

**JBI, Inc.**
*(Exact name of registrant as specified in its charter)*

| Nevada | 90-0822950 |
|---|---|
| *(State or other jurisdiction of incorporation or organization)* | *(IRS Employer Identification No.)* |

20 Iroquois Street
Niagara Falls, NY 14303
*(Address of Principal Executive Offices) (Zip Code)*

Registrant's telephone number: (716) 278-0015

Securities registered pursuant to Section 12(b) of the Act: None.

Securities registered pursuant to Section 12(g) of the Act: Common Stock, par value $0.001 per share.

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☐   No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Exchange Act. Yes ☐   No ☒

*Concentration of ownership among our existing officers, directors and principal stockholders may prevent other stockholders from influencing significant corporate decisions and depress our share price.*

As of the date of this report, our officers, directors and existing stockholders who hold at least 10% of our shares will together beneficially own approximately 17.03% of our issued and outstanding common stock. As of the date of this report, our founder and current Chief of Technology, John Bordynuik owns approximately 4.81% of our issued and outstanding common stock. In addition, Mr. Bordynuik is the sole owner of our issued and outstanding Series A Preferred Shares, consisting of 1,000,000 Series A Preferred Shares. The Series A Preferred Shares have voting rights that are 100 times the voting rights of our common stock. Therefore, Mr. Bordynuik controls approximately 50.65% of the voting power of the Company's share capital. Mr. Bordynuik's voting ability is limited to certain matters of the Company, pursuant to an agreement with certain shareholders of the Company, however, even with these limitations, he is able to exert a significant degree of influence over matters requiring shareholder approval, including the election of directors, any amendments to our articles or by-laws and significant corporate transactions. The interests of this concentration of ownership may not always coincide with the Company's interests or the interests of other stockholders. For instance, officers, directors, and principal stockholders, acting together, could cause the Company to enter into transactions or agreements that it would not otherwise consider. Similarly, this concentration of ownership may have the effect of delaying or preventing a change in control of the Company otherwise favored by our other stockholders. This concentration of ownership could depress our share price.

*We do not anticipate paying cash dividends, and accordingly, stockholders must rely on share appreciation for any return on their investment.*

Since inception, we have not paid dividends on our common stock and we do not anticipate paying cash dividends in the near future. As a result, only appreciation of the price of our common stock, which may never occur, will provide a return to stockholders. Investors seeking cash dividends should consider not investing in our common stock.

*We incur significant costs as a result of operating as a public company, and our management is required to devote substantial time to new compliance initiatives.*

As a public company, we incur significant legal, accounting and other expenses. In addition, the Sarbanes-Oxley Act, as well as related rules implemented by the SEC, the Public Company Accounting Oversight Board ("PCAOB") and the OTCQB impose various requirements on public companies. Our management and other personnel devote a substantial amount of time to these compliance initiatives. Moreover, these rules and regulations increase our legal and financial compliance costs and make some activities, such as maintaining director and officer liability insurance, more time-consuming and costly.

In addition, the Sarbanes-Oxley Act requires, among other things, that we maintain effective internal control over financial reporting and disclosure controls and procedures. We must perform system and process evaluation and testing of our internal controls over financial reporting to allow management to report on the effectiveness of our internal controls over financial reporting, as required by Section 404(a) of the Sarbanes-Oxley Act. Our compliance with Section 404(a) will require that we incur substantial accounting expense and expend significant management time on compliance-related issues. If we are not able to comply with the requirements of Section 404 in a timely manner, our stock price could decline, and we could face sanctions, delisting or investigations, or other material adverse effects on our business, reputation, results of operations, financial condition or liquidity.

*Shares of common stock eligible for sale in the public market may adversely affect the market price of our common stock.*

Sales of substantial amounts of our common stock by stockholders in the public market, or even the potential for such sales, may adversely affect the market price of our common stock and could impair our ability to raise capital through selling equity securities. As of the date of this filing, approximately 59.9 million of the 89.9 million shares of common stock currently outstanding were freely transferable without restriction or further registration under the securities laws, unless held by "affiliates" of our company, as that term is defined under the securities laws. We also have outstanding, approximately 30.0 million shares of restricted stock, as that term is defined in Rule 144 under the securities laws that are eligible for sale in the public market, subject to compliance with the requirements of Rule 144. Additionally, upon conversion of the Series B Preferred Stock, an additional 16.1 million shares will become outstanding and freely transferable.

Bloomberg Law

© 2013 Bloomberg Finance L.P. All rights reserved. Terms of Service
http://www.bloomberglaw.com/ms/document/X6SPQGJAMRG001 // PAGE 28